## SUMMARY
### Review Of Facts Regarding Defendants' Actions,
### Resulting In Injury To Plaintiff:

195. The Defendants are accountable for taking the following actions, which resulted in injury to the Plaintiff:

**(1)**

196. Kevin Spacey and Dana Brunetti, acting alone or in conspiracy with other Defendants, create a social network website, called Trigger Street, or TriggerStreet ("TS" herein), located at triggerstreet.com from 2002 until 2011, and at labs.triggerstreet.com from 2011 until 2014.

**(2)**

197. Kevin Spacey and Dana Brunetti, acting alone or in conspiracy with other Defendants, published and rendered the TS "Terms of Use" contract page, which stated:

> Unless otherwise specified, the materials on the Site and in the Services are presented **solely for** the purpose of promoting the entertainment, information, and community resources and services available in, and other uses in, **the United States of America.** We control and operate the Site and the Services from within the United States. We make no representation that materials on the Site or the Services are appropriate or available for use in locations outside the United States, and accessing them from territories where their contents are illegal is prohibited. Those who choose to access the Site from other locations do so on their own initiative and are responsible for compliance with local laws.

198. The previous statement from the TS "Terms of Use" page was deliberately false and/or misleading, and intended to inform members (or suggest, imply or insinuate) that TS was intended for use by and for, users in the USA. This was false, and WAS FRAUD, A MISREPRESENTATION, A FALSE STATEMENT, AND A DECEIT. These false statements were made to falsely assure informed, savvy writers that the website was safe from foreign "bad actors', as there are many nations that do not, or cannot enforce the Universal Copyright Convention, and often American copyright holders never learn that their works were misappropriated by foreign infringers, because the stolen works are only displayed in the infringers' nation. (TS also may have stated it was intended for US use to

1    avoid paying taxes on the international earnings from its Budweiser endorsement deal.)

2    199.   In truth, unbeknownst to American users, from the outset TS was intended for
3    international use.

4    200.   The Defendants' action were also a violation of 18 U.S. Code § 1001 - Statements
5    or entries generally (a) (1), which makes it illegal to make any materially false, fictitious,
6    or fraudulent statement or representation.

7    (3)

8    201.   Defendant Kevin Spacey made numerous trips abroad, to London, Spain, etc., to
9    give speeches and interviews, and throw parties, intent to recruit new TS members. While in
10    Spain, in 2009, Spacey stated, "I started the website about six years ago, and we now have
11    close to 400,000 members around the world."

12    202.   This was **BREACH OF CONTRACT**, as most (perhaps all) members in the USA
13    believed the website was solely for use in the USA.

14    (4)

15    203.   TS and the Defendants provided content and programming from TS to Bud.TV
16    from 2007 to 2009. Bud.TV also ran an international advertising campaign about this. This
17    international ad campaign advertised TS all around the world, as well as Bud.TV. Both,
18    advertising TS in Bud.TV promotions, AND advertising TS on Bud.TV itself, were
19    **BREACHES OF CONTRACT** of TS's Terms of Use contract page.

20    (5)

21    204.   The Defendant(s) made the TS website with effectively no security features, as
21    ALL members were allowed to ANONYMOUSLY read ALL screenplays. This, while TS
22    claimed to be industry standard, encapsulating all of the desires and needs of its users, and
23    touted its state of the art security. This was a violation of state and federal conspiracy,
24    negligence, gross negligence, fraud, deceit, misrepresentations, and false statements laws.

25    (6)

26    205.   Unlike a truly "industry standard" site like WritersScriptNetwork.com, all TS
27    members/users were encouraged and deceived into using and navigating the website with
28    false identities (even for writing reviews). Intent to protect the identities of misappropriating

conspirators, the Privacy page was written and designed to scare user/members into using false identities. The TS Privacy page stated:

> User Names and User Disclosure
> The user name you select or are provided with upon registration with the Site is deemed non-personally identifiable information. Your user name may be published on the Site and may be disclosed to others, including, without limitation, to the public, and to any third parties with whom we elect to share such information. In addition, **if you include your name or any other personally identifying information** in any material transmitted or posted on public areas of the Site or the Services (including, without limitation, message boards, **reviews** and chat rooms), **such information will become public information and will be published on the Site and will be disclosed to other users of the Site and to other third parties who may have access to or otherwise see a display of such information.**

206.   These statements were made to encourage users to take risks they ordinarily would not take, and should not take, as part of the Defendants efforts to persuade users/members to make their wares accessible to the Defendants. This was CONSPIRACY and DECEIT.

(7)

207.   The TS Privacy page suggested that the website had a method to reveal the true identity of all "accessors", if necessary.

> Information Disclosure
> We reserve the right to disclose information submitted by or concerning any user as we feel is necessary to protect our systems or business. Specifically, but without limitation, we reserve the right to disclose such information when a visitor or member is in violation of our Terms of Use or any other agreement with us, or engages (or is suspected of engaging) in any harmful, infringing or illegal activity....

208.   However, there is no evidence to support that TS ever, truly, had any method of retrieving any access records, or the accessor's true identity, etc. Nor is there any reason to believe such a system ever existed on TS. Thus, the Defendants' action were in violation of 18 U.S. Code § 1001 - Statements or entries generally, which makes it illegal to make any materially false, fictitious, or fraudulent statement or representation.

page

(8)

209. The Defendant(s) made extraordinary and fraudulent claims about website security; doing so to lure in the best undiscovered writers, and eliminate any doubts or suspicions users might otherwise reasonably have. Such false and exceptional claims as:

   a. The TS "About Us" page stated:

   "Our team has been extensively researching and designing TriggerStreet.com to ensure that it **encapsulates <u>every</u> aspect of the user's <u>desires</u> and <u>needs</u>**."

210. THIS WAS FRAUD. All reasonable screenwriter members would expect (from a website assuring that the website "**encapsulates <u>every</u> aspect of the user's <u>desires</u> and <u>needs</u>**") that records be preserved of all access of writers' work, identifying which members accessed which works, AND recorded by the accessor's true name —AND NOT erase all access history if the member removes his/her work because he/she worries his work may be unsafe on the website. Members would reasonably expect and *desire* this (from a site claiming to be industry standard) because other websites were already doing this (InkTip.com, perhaps others). Further, all reasonable members would **desire** and **need** a website to use accurate language, and behave in accordance with the implicit language of the Website's Terms of Use". And if the "Terms of Use" stated, suggested, implied—or used language that implied—that the website was solely for use in the USA, members should expect that site operators would act in accordance with that agreement, and not advertise or recruit abroad. This false claim was made to lure writers to an unsafe website.

211. This was deceit. The Defendants' action were also in violation of <u>18 U.S. Code § 1001 - Statements or entries generally</u>, which makes it illegal to make any materially false, fictitious, or fraudulent statement or representation.

   a. On the TS Privacy page, the "Security" message stated:

   "Security
   When you <u>submit</u> <u>information</u> via the Site, your information is protected using secure data networks protected by **industry standard firewall and password protection systems**. Our security practices and policies are <u>periodically</u> <u>reviewed</u> <u>and</u> <u>updated</u> as necessary, and only authorized individuals have access to the information provided by our users."

212. THIS WAS FRAUD. There was nothing "industry standard" about the TS screenwriter website. The standard was set by Writers Script Network.com (InkTip.com). InkTip kept all records of all access, even after members left. On Inktip.com, there was no feature erasing all access records upon script removal. By implying all information was protected and secure and industry standard, reasonable members would assume all members' access activity would be recorded, stored, and protected —not erased.

213. The Defendants' action were also a violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1), which makes it illegal to make any materially false, fictitious, or fraudulent statement or representation.

    b. The Defendant(s) and TS used Def Spacey's stardom to lure in writers, then writers were **promised** "industry access and exposure"; using Spacey's fame and Academy Award winning laurels to leverage a false promise. TS's statement from its "About Us" page promised that:

> "Based on the principles of creative excellence, it (the TS website) provides **industry access and exposure** to help build the careers of notable new filmmakers and screenwriters."

214. THIS FALSE PROMISE, bolstered by the other fraudulent statements on the "Terms of Use", "About Us", and "Privacy" pages, expanded a pattern of false statements, misrepresentations, fraud and deceit. The Plaintiff did NOT expect to be *discovered*. But he also did NOT expect to be cheated by these industry insiders.

(9)

215. The Defendants added a new counter security feature, whereby if a member removed his/her screenplays from the TS website because he/she worried that it might be unsafe or the target of infringers or pirates, the moment the writer removed his script ALL access records would be erased. The Plaintiff believes the Defs added this feature in 2007 to access and steal the Plaintiff's work. But whether this extra hidden layer of counter-security was added when the website was made, in 2002, or if it was added in 2007, the Defendant(s) and TS did not inform members about this feature, and it was never mentioned on the TS website. The Defendants' failure to inform members of this counter-security

1 | feature, and the risks it posed, was a deliberate omission of imperative information. The Defendants actions were in violation of California Civ. Code § 1572, fraud by omission, and constitute DECEIT in violation of California Civ. Code § 1709, and these actions and inactions were in violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1), which makes it illegal to conceal or cover up such facts.

(10)

216.   Corporations are expected to do due diligence in all substantial purchases, transactions and deals (such as investing $120 million in a film). Due diligence means doing "a **complete and appropriate** review of documentation and facts by a potential buyer or its agents before purchasing an asset or engaging in business with a prospect" (from the Law Offices of Stimmel, Stimmel & Smith); this definition goes on to require a "...complete review using lawyers and CPAs to assist so that when one is done, one knows all that one needs to know before engaging in business with or buying a company or other asset or piece of property." The Defendants did not do due diligence —not even reading the screenplay before buying its rights; thus, the Defendants engaged in **gross negligence.**

(11)

217.   The Defendants engaged in conflicts of interests that violated **CALIFORNIA LABOR CODE SECTION 1700.39**, which states, "No talent agency shall divide fees with an employer, an agent or other employee of an employer." Defendant Ari Emanuel was the central talent agent in making the film Elysium, representing Elysium's star Def Matt Damon, and its writer/director Def Neill Blomkamp. Defendant Ari Emanuel is also an owner of MRC (the employer of Def Neill Blomkamp for the making of Elysium, and the buyer of Elysium's film rights). Thus, Def Ari Emanuel divided fees as a talent agent and employer. The Plaintiff was injured by this violation of California law.

(12)

218.   The Defendants engaged in VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ., UNFAIR BUSINESS PRACTICES ACT. Sony Pictures' (a publicly traded company), and its CEO Michael Lynton, violated California Business & Professions Code § 17200, ET SEQ., by engaging in improper and unethical

business relationship, whereby Michael Lynton, acting as an officer of Sony Pictures, hired a subcontract, Screenbid, to sell numerous items of substantial value for Sony Pictures. Thus, Def Lynton profited as Sony Pictures' CEO, and he and Def Ari Emanuel profited as the owners of Screenbid, the subcontracted auction service. This was a conflict of interest.

219.   This improper relationship caused CEO Michael Lynton to encourage his subordinates and peers NOT to scrutinize projects, clients or business entities associated with his secret business partner Def Ari Emanuel. Thus, Sony Pictures agreed to distribute Elysium without doing due diligence to read a screenplay to see to it that it was reasonably executed. Had Sony Pictures employed a reasonable standard of due diligence, Elysium would not have been made; thus, no injury would have come to the Plaintiff.

(13)

220.   The Defendants engaged in Obstruction Of Justice by closing and destroying the TS website 6 days after the Plaintiff filed his Notice of Appeal to the Ninth Circuit Court of Appeals. The Defendants did this to destroy incriminating evidence, because the district court based its MFSJ ruling on reversed law, cited by the Defendants, rather than the prevailing law, cited by Plaintiff. Thus, Briggs v Blomkamp, et al, is/was apt to be returned to the lower court, where the Plaintiff will/would subpoena all website access records, to confirm the Defendants used TS to access the Plaintiff's work, and confirm that TS misrepresented its security and ID protection features, and had no such records or oversight at all.

(14)

221.   By conspiring to hire an admitted "fixer", Jeff Rovin (who spent years of his life preparing false smear stories for tabloid news), to prepare and submit a falsified "expert" report to the court, the Defendants engaged in SUBORNATION OF PERJURY. This was also a violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1), which makes it illegal to knowingly and willfully: (1) falsify, conceal, or cover up by any trick, scheme, or device a material fact; (2) make any materially false, fictitious, or fraudulent statement or representation; or (3) make or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

(15)

222. By stating, in their answers to the Plaintiff's interrogatories, that Simon Kinberg only provided a "polish" to the Defendants script, "Elysium", when, in fact, he did exhaustive work to salvage the screenplay, the Defendant(s) committed **Perjury**. This was also a violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1), which makes it illegal to conceal or cover up such facts.

(16)

223. In Briggs v Blomkamp, the Plaintiff stated that the Elysium film editor(s) would confirm that the Film's editing resumed in June, 2013 (after wrapping up originally in February 2013), after the Defendants learned of the Plaintiff's immanent lawsuit. The Plaintiff stated the editor(s) would also confirm that this final film editing was done to try to remove the the hero's headaches. But the Defendants refused to provide Plaintiff any access to Elysium's final editor, Lee Clarke. In doing so the Defendants **VIOLATED RULE 37** —a violation that may have changed the outcome of the case. In doing so, the Defendants endeavored to **conceal** and **cover** up their misappropriation of the Plaintiff's work; a violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
CONSPIRACY
Violating California Penal Code 182(a)(3),(4), and/or (5)
**(Against All Defendants)**

224. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 223, as if fully set out herein.

California Penal Code 182 (a)(3)(4)(5) makes it unlawful:

(a) If two or more persons conspire:
(3) Falsely to move or maintain any suit, action, or proceeding.
(4) To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform those promises.
(5) To commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws.

225. The Defendants engaged in three (3) conspiracies, in violation of California Penal Code 182(a) (3)(4) and/or (5). California Penal Code requires that one of the conspirators commit an **overt act** in the process. The Defendants committed many overt actions:

### First Conspiracy

226. To unlawfully enrich themselves, the Defendants conspired to create a social network for screenwriters and filmmakers, with little or no security features. The Defendants would then mislead screenwriters that the website was safe, then the Defendants could access and misappropriate these screenwriter's work.

227. **Overt Act #1:** The Defendants conspired to create a social network website.

228. **Overt Act #2:** The Defendants conspired to design the website with effectively no security features.

229. **Overt Act #3:** The Defendants conspired to commit fraud and mislead website member/users that the website had reasonable security features, when it had none.

230. **Overt Act #4:** The Defendants conspired to add a counter security feature that erased all access information if members removed their screenplays.

231. **Overt Act #5:** The Defendants apparently conspired to add this feature (described in the previous paragraph) in 2007, to erase evidence of their access of the Plaintiff's script.

232. **Overt Act #6:** The Defendants conspired to make the film Elysium (which may still be legally proven to be derived from the Plaintiff's work), careful not to leak any information about the project.

233. **Overt Act #7:** The Defendants conspired to create website *Terms of Use* page that stated the website was intended solely for use in America, but the Defendants repeatedly sent Def Spacey around the globe to recruit members. The Defendants ALSO secretly advertised TS on international websites (like Bud.TV) and in other international publications. The Defendants knew what the Terms of Use rules stated, and they agreed amongst themselves that it was important to violate said rules, to get international members.

234. **Overt Act #8:** While producing the film Elysium, the Defendants conspired to keep the Elysium script an absolute secret, not even allowing Hollywood giants like Jody Foster to take her script home.

235. **Overt Act #9:** The Defendants (particularly Ari Emanuel, who profited the most from these acts and arrangements) also had Def Matt Damon and Ben Affleck start a screenwriter/filmmaker website, similar to TriggerStreet, called Project Greenlight. Affleck and Damon have been Def Emanuel's clients (through Endeavor and WME-IMG) for most of their careers. Both websites (TS and Project Greenlight) have been accused of being the place of access in major film and TV copyright infringement suits. Both "stolen" film or TV projects were eventually sold to companies with questionable relationships to Def Emanuel (MRC and Universal Pictures -or their parents or subsidiaries). Both websites (TS and Project Greenlight) used suspiciously similar language: "peer reviews," "peer-to-peer," etc.

### Second Conspiracy

236. Once the Plaintiff realized the Defendants misappropriated his work, he sued.

237. In response, the Defendants designed a second conspiracy, to prevent the Plaintiff from duly prevailing in his copyright lawsuit. This would require cheating the Plaintiff, and cheating the US and California civil justice systems.

238. **Overt Act #10:** Rather than hiring any one of of perhaps ten-thousand well qualified California intellectual property attorneys for their expert witness in Briggs v Blomkamp, et al, the Defendants opted to hire a New York conman named Jeff Rovin, who admitted on Fox News "The Sean Hannity Show" that he was a professional "fixer" who worked for President Bill Clinton's administration, and used his literary skill to create "smear" stories for junk tabloid newspapers to attack Clinton critics. Rovin said he came to work for Bill and Hillary Clinton because he was working for another "actor" in the Clinton White House. The Plaintiff is certain that other actor is Rahm Emanuel, who was Senior Advisor to the President (Clinton). Rahm Emanuel is Defendant Ari Emanuel's brother. Rahm likely referred Def Ari Emanuel to hire Jeff Rovin to "fix" the expert report. Def Ari Emanuel is a co-owner of MRC, Defs Blomkamp's agent, and business partner of Bill Block (CEO of QED Int.), all of whom were named in Briggs v Blomkamp, et al.

239. **Overt Act #11:** Defendants conspired to prevent the Plaintiff from speaking to editor Lee Smith in Briggs v Blomkamp.

240. **Overt Act #12:** The Defendants conspired to commit perjury, stating that Simon

Kinberg merely "polished" Def Blomkamp's script.

241. **Overt Act #13:** The Defendants conspired to shut-down and destroy the TS social network 6 days after the Plaintiff filed his Notice Of Appeal, also obstructing justice.

### Third Conspiracy

242. To greatly increase and accelerate their rate of personal enrichment, the Defendants conspired to break California business, labor and ethics codes. Breaking these business labor and ethics codes caused a disintegration in the Defendants' business practices, causing them to act recklessly, and negligently.

243. **Overt Act #14:** The Defendants conspired to commit to invest over $100,000,000 to make the film Elysium, without reading a script.

244. **Overt Act #15:** The Defendants conspired to create an arrangement where Universal Pictures or its parent or its subsidiaries, will finance and/or distribute any project Def Ari Emanuel brings Universal Pictures—even unlawfully acquired projects.

245. **Overt Act #16:** The Defendants conspired to engage in inappropriate business relationships, such as Def Emanuel and Sony Pictures CEO Michael Lynton co-owning Screenbid, and Defendant Emanuel co-owning MRC (violating Cal Labor Code 1700.39).

246. In the aforementioned actions, and others detailed in this Complaint, and perhaps others to be revealed at trial, the Defendants willfully, maliciously, fraudulently, with wrongful intent to harm the Plaintiff, with disregard for the Plaintiff's rights and welfare, and with disregard for ethics and for the law, engaged in one or more conspiracies.

247. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### OBSTRUCTION OF JUSTICE & ANTICIPATORY OBSTRUCTION OF JUSTICE
### Violating 18 U.S. Code § 1519
Destruction, Alteration, Or Falsification Of Records In A Federal Investigation
**(Against All Defendants)**

248. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 247, as if fully set out herein.

249. 18 U.S. Code § 1519 makes it unlawful to destroy evidence, etc., in anticipation or

contemplation of a legal action; stating:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or **contemplation** of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

250. The Defendants engaged in obstruction of justice (and/or anticipatory obstruction of justice), violating 18 U.S. Code § 1519, by endeavoring to close and destroy their social network TriggerStreet.com, as detailed throughout this Complaint. Although the Defendants knew the website was the central access point of an ongoing legal case, they closed the site 6 days after the Plaintiff filed his Notice Of Appeal; doing so while the site was still growing, without giving the website's perhaps 700,000 members an explanation.

251. In these actions, detailed in this Complaint, and perhaps others to be revealed at trial, the Defendants willfully, maliciously, with wrongful intent to harm the Plaintiff, and with disregard for the law, acted to violate the law and obstruct justice.

252. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial, in addition to any other remedies deemed necessary and appropriate by the court.

### THIRD CLAIM FOR RELIEF
### FRAUD AND FALSE STATEMENTS
**Violating 18 U.S. Code § 1001 (Statements or entries generally)**
**(Against All Defendants)**

253. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 252, as if fully set out herein.

254. In their actions, detailed in this Complaint, the Defendants willfully, maliciously, with wrongful intent to harm the Plaintiff and perhaps others, with disregard for the law, committed numerous acts of fraud, misrepresentations, deceit, fraudulent omissions, false statements, etc., in violation of 18 U.S. Code § 1001.

255. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
Violating California Code, Civil Code § 3294
**(Against All Defendants)**

256. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 255, as if fully set out herein.

257. In their actions detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully and with disregard for ethics and law, committed numerous acts of Breach Of Contract, in violation of California Civil Code § 3294.

258. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### FRAUD
Violating California Civ. Code § 1572
**(Against All Defendants)**

259. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 258, as if fully set out herein.

260. In their actions detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, maliciously, and with wrongful intent to harm the Plaintiff and perhaps others, and with disregard for the law, committed numerous acts of fraud, misrepresentation, deceit, fraudulent omissions, false statements, etc., in violation of California Civ. Code § 1572.

261. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### DECEIT
Violating California Civ. Code § 1709
**(Against All Defendants)**

262. The Plaintiff Hereby realleges and incorporates by reference paragraphs 1 through 261, as if fully set out herein.

263. In their actions detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, maliciously, and with wrongful intent to harm the Plaintiff

57

(and perhaps others), and with disregard for the law, committed numerous acts of deceit, in violation of California Civ. Code § 1709.

264. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
<u>NEGLIGENCE</u>
**Violating 19 U.S. Code § 1592 (Penalties for fraud, gross negligence, and negligence)**
**(Against All Defendants)**

265. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 264, as if fully set out herein.

266. In their actions, detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants, with wrongful intent to harm the Plaintiff (and perhaps others), with disregard for ethics and the law, acted with negligence, in violation of 19 U.S. Code § 1592.

267. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
<u>GROSS NEGLIGENCE</u>
**Violating 19 U.S. Code § 1592 (Penalties for fraud, gross negligence, and negligence)**
**(Against All Defendants)**

268. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 267, as if fully set out herein.

269. In their actions, detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, maliciously, with wrongful intent to harm the Plaintiff (and perhaps others), with disregard for the Plaintiff, ethics, and the law, acted with gross negligence, in violation of 19 U.S. Code § 1592.

270. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**
<u>VIOLATING CALIFORNIA LABOR CODE § 1700.39</u>
**(Against All Defendants)**

271. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

270, as if fully set out herein.

272. In their actions, detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, with wrongful intent, and disregard for others, ethics and the law, violated California Labor Code 1700.39.

273. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

### TENTH CLAIM FOR RELIEF
### VIOLATION OF UNFAIR BUSINESS PRACTICES ACT
### [CAL BUS & PROF CODE§ 17200, ET SEQ.]
**(Against All Defendants)**

274. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 273, as if fully set out herein.

275. In their actions, detailed in this Complaint, and perhaps others to be revealed at trial, the Defendants willfully, with wrongful intent, motivated to unlawfully enrich themselves, with negligent disregard for the Plaintiff, others, ethics and the law, violated the Unfair Business Practices Act [Cal Bus & Prof Code§ 17200, Et Seq., namely: officers of separate but cooperating businesses, willfully entered a conflict of interest, by going into a secret, private business partnership as co-owners of Screenbid, which the Defendants used as a subcontractor for their separate businesses. These conflicts of interests eroded the Defendants business standards and practices; creating the circumstances whereby the Defendants were able to misappropriate the Plaintiff's intellectual property.

276. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

### ELEVENTH CLAIM FOR RELIEF
### PERJURY
**Violating 18 U.S. Code § 1621 (Perjury generally)**
**(Against All Defendants)**

277. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 276, as if fully set out herein.

278. In their actions, detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, maliciously, with disregard for the law,

committed perjury, in violation of 18 U.S. Code § 1621.

279. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

### TWELFTH CLAIM FOR RELIEF
### TAMPERING WITH EVIDENCE
**Violating 18 U.S. Code § 1512(c)(1) (Tampering with a witness, victim, or informant)**
**(Against All Defendants)**

280. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 279, as if fully set out herein.

281. In their actions, detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, maliciously, and with disregard for the law, engaged in tampering with evidence, in violation of 18 U.S. Code § 1512(c)(1).

282. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

### THIRTEENTH CLAIM FOR RELIEF
### WITNESS TAMPERING
**Violating 18 U.S. Code § 1512(c)(2) (Tampering with a witness, victim, or informant)**
**(Against All Defendants)**

283. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 282, as if fully set out herein.

284. In their actions, detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, and with disregard for the law, justice, and the Plaintiff's rights, engaged in tampering with evidence, in violation of 18 U.S. Code § 1512(c)(1).

285. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

### FOURTEENTH CLAIM FOR RELIEF
### SUBORNATION OF PERJURY
**Violating 18 U.S. Code § 1622**
**(Against All Defendants Except The California Dept. Of Business Oversight)**

286. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 285, as if fully set out herein.

287. In their actions, detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully and maliciously violated the Plaintiff's rights and the law, to engage in subornation of perjury, in violation of 18 U.S. Code § 1622.

288. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

### PRAYER FOR RELIEF:

WHEREFORE, Plaintiff prays for a judgment against the Defendants as follows:

1. For general damages in an amount according to proof at the time of trial;
2. For exemplary damages;
3. For special damages in an amount according to proof at trial;
4. For restitution and disgorgement of all profits (estimated at $850,000,000—which represents the total projected profits that the Defendants will realize from the misappropriation of the Plaintiff's work, see page 18, para 2) in favor of the Plaintiff, consistent with US copyright remedies (plus any exemplary damages for deceiving the district court);
5. For Plaintiff's cost of this lawsuit and reasonable attorney's fees;
6. For such injunctions and additional relief the Court may deem proper..

DATED: November 13th, 2017

Respectfully Submitted

By: _____

Steve Wilson Briggs, Plaintiff