| | |
|---|---|
| 1 | **Steve Wilson Briggs** |
| 2 | 681 Edna Way |
| 3 | San  Mateo, CA 94402 |
| 4 | 510 200 3763 |
| 5 | snc.steve@gmail.com |
| 6 | PLAINTIFF In Propria Persona |
| 7 | |

<div align="center">

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

</div>

| | | |
|---|---|---|
| 10 | STEVE WILSON BRIGGS | Civ No: CV 17 6552 VC |
| 11 | Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT NBCUNIVERSAL'S MOTION TO DISMISS** |
| 12 | vs | |
| 13 | UNIVERSAL PICTURES, et al., | Judge:      The Honorable Vince Chhabria |
| 14 | Defendants. | Date:       February 22th, 2018 |
| 15 | | Time:       10:00 a.m. |
| | | Courtroom:  4 |

16  <u>**PLAINTIFF'S OPPOSITION TO DEFENDANT NBCU'S MOTION TO DISMISS**</u>

17  <div align="center">INTRODUCTION:</div>

18  Plaintiff Steve Wilson Briggs hereby submits this **Opposition** to Defendant(s) NBCU's

19  Motion To Dismiss First Amended Complaint and Memorandum Of Points And Authorities.

20  With the default deadline nigh, in response to the Plaintiff's Complaint, on December

21  28, 2017, the Defendants (Defs) submitted a flawed and misleading Motion to Dismiss,

21  which the Plaintiff successfully opposed.

22  January 2nd, 2018, Plaintiff submitted his First Amended Complaint (**FAC**): 60 pages

23  of irrefutable facts, with 39 exhibits (contracts, interrogatories, and news articles about the

24  Defs, **in their own words**). Left with no plausible denials to file a traditional Answer, the

25  Defs were forced to file a Motion To Dismiss. But knowing any such Motion would have no

26  merit, the Defs chose a rash strategy: **file 2 simultaneous motions to dismiss** (hoping to

27  overwhelm the Plaintiff, or frustrate the Court into granting one of these dishonest Motions).

28  The Defs' Motion(s) throw in every imaginable defense and harangue that the FAC is

1  somehow deficient, as if acrimony were an alternative to law. But **this Opposition** confirms

2  the Plaintiff's FAC is, in fact, quite sound.

3      Contrary to the Defs' protestations, **California recognizes conspiracy** as "...a legal

4  doctrine that imposes liability..." And CA **Civ** Jury Instructions (CACI) 3600 explains:

5      **A conspiracy may be inferred from circumstances, including the nature of the**

6  **acts done, the relationships between the parties, and the interests of the**
   **alleged coconspirators.** [Name of plaintiff] **is not required to prove that** [name

7  of defendant] **personally committed a wrongful act or that [he/she] knew all**
   **the details of the agreement or the identities of all the other participants.**

8

9      In accord with CACI 3600, the **Plaintiff does NOT need to prove any Defendant**

10  **committed any wrongful act**, AND a jury may INFER a conspiracy from factors such as

11  circumstances, the nature of the acts done, the relationships between the parties, and the

12  interests of the alleged co-conspirators

13      In concert with CACI 3600, the Plaintiff's FAC carefully includes details that establish

14  circumstances, Defendant relationships, nature of the acts done, and shared interests of the

15  Defendants, to help the Court and all jurors comfortably decide in the Plaintiff's favor.

16  THIS is why the Defendants are frantically trying to stop this action.

17      NBCU's Motion divides its time making spurious arguments for dismissal, and making

18  veiled entreaties to the Court to extricate NBCU, whom they falsely portray as faultless. But

19  3 of the 5 Defense attorneys work for **NBCU**, because NBCU has tremendous exposure.

20      The Def's Motion claims spoliation is not Causes of Action in California. But, in fact:

21  1. California allows spoliation claims (per *Cedars-Sinai Med. Ctr. v Superior Court*

21     (1988) 18 C4th 1, 17, 74 CR2d 248) **in cases such as this**, when: **(A)** the spoliator is

22     not a party to the lawsuit, but a third party with a duty to preserve the evidence; or

23     (**B**) when the spoliation victim does not learn of the spoliation until after trial or a

24     decision on the merits (as in this case: Plaintiff learned 15 months after the decision.)

25  Two of the more of the more interesting commonalities about these two Motions are:

26  1. Neither Motion mentions the *Breach of Contract* claim;

27  2. Neither Motion denies Defs Spacey and/or Brunetti destroyed TriggerStreet.

28                                          ii

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................................... **i**

**TABLE OF CONTENTS**....................................................................................... **iii**

**TABLE OF AUTHORITIES**……………………………………………. **vi**

**MEMORANDUM OF POINTS AND AUTHORITIES**................................ **1**

    **a.  LEGAL STANDARD**............................................................ **1**

        **1.  Dismissal**............................................................ **1**

        **2.  Stating The Claims**.......................................... **1**

**STATEMENT**........................................................................................ **2**

**STATEMENT OF FACTS**................................................................... **2**

    **a.  Briggs v Blomkamp (Prior Action) Facts**....................... **3**

    **b.  Briggs v Universal Pictures, et al, (Current Action) Facts**.......... **4**

**ARGUMENT**.......................................................................................... **7**

  **1.  THE DEF'S MOTION FALSELY ASSERTS THAT THE**
      **FAC FAILS TO PROVIDE NOTICE OF THE BASIS FOR**
      **PLAINTIFF'S CLAIMS AGAINST NBCU**……………………………… **7**

    **(A)** FAC EXPLAINS THAT PROPERTY STOLEN (PERHAPS
        BY OTHER DEFS) REPEATEDLY CAME INTO THE
        POSSESSION OF DEF UNIVERSAL PICTURES………………………. **8**

    **(B)** THE FAC ILLUSTRATES HOW DEF  UNIVERSAL (NBCU)
        PARTICIPATED IN UNSCRUPULOUS ENGAGEMENTS WITH
        THE OTHER DEFS, AND EXPLAINS WHY THEY DID SO
        —IN THE DEFS' OWN WORDS!.................................................. **8**

    **(C)** THE FAC REVEALS WHY DEF UNIVERSAL PICTURE
        ENGAGED IN THESE ACTIVITIES AND RELATIONSHIPS
        —IN DEF WICZYK'S OWN WORDS!.................................... **10**

iii

**(D)** THE FAC SHOWS THAT IMMEDIATELY AFTER SPACEY
FORMED TRIGGERSTREET, UNIVERSAL PICS GAVE SPACEY
UNUSUALLY GENEROUS ROLES THAT NO OTHER STUDIO
WOULD OFFER —NOT EVEN SPACEY'S HOME STUDIO,
WARNER BROS……………………………………………………..… **10**

**(E)** THE FAC SHOWS THAT AFTER DEF SPACEY FORMED
TS, UNIVERSAL PICTURES (NBCU) GAVE DEF MRC A
MASSIVE NEW CONTRACT…………………………………………… 11

**(F)** THE FAC SHOWS THAT UNIVERSAL PICTURES (NBCU)
GAVE DEF BRUNETTI A <u>VERY</u> GENEROUS OPPORTUNITY
THAT NO ONE ELSE IN HOLLYWOOD HAS GIVEN BRUNETTI,
BEFORE OR SINCE……………………………………………………… **12**

**(G)** USING THE DEFS OWN TEXT MESSAGES, THE FAC SHOWS
THAT UNIVERSAL PICS WAS SILENTLY USED TO DRIVE UP
BIDDING ON FILMS LIKE "STEVE JOBS"; THUS, THEY
PROFITED FROM, AND HELPED OTHER DEFS PROFIT FROM
UNETHICAL (AND LIKELY ILLEGAL) ACTIVITY….………….....… **12**

**2. A. THE DEFS FALSELY CLAIM THE FAC IS AN IMPROPER
COLLATERAL ATTACK ON THE DISMISSAL OF PLAINTIFF'S
PRIOR LAWSUIT……………………..……………………..……………... 13**

2. **B.** Redundant to the "Collateral Attack" claim, The Defs Also Falsely
Claim The Plaintiff Is "RE-LITIGATING" the Prior Action………....…….. **14**

2. **C.** Redundant To Both The *Collateral Attack*, And "Relitigating"
Defenses, The Defs Falsely And Senselessly Assert A
RES JUDICATA Defense Against The FAC………..……………………….. **14**

**3. A.** DEFENDANTS FALSELY CLAIM CALIFORNIA DOES NOT
RECOGNIZE CIVIL *CONSPIRACY*………..…….………....……………… **14**

iv

**3. B.** DEFENDANTS' FALSELY CLAIM THAT THERE IS NO UNDERLYING

TORT TO SUPPORT A CIVIL CONSPIRACY CLAIM……..……………… **18**

**4. DEFS FALSE CLAIM CALIFORNIA DOES NOT RECOGNIZE**

**SPOLIATION**………..……..………………………………………………… **18**

**5. DEFENDANTS ASSERT THAT THE FAC FAILS TO ALLEGE ANY**

**CONDUCT BY NBCU THAT SUPPORTS A NEGLIGENCE CLAIM**…........ **19**

**6. THE FAC DOES NOT ALLEGE ANY CONDUCT BY NBCU**

**VIOLATING THE LABOR CODE**……………………………….…………… **20**

**7. RULE 8 THE FAC FAILS TO STATE A PLAUSIBLE CLAIM AGAINST**

**NBCU**…………………………...…….…..……………………………… **20**

**CONCLUSION**…………………………………………………………… **21**

v

**TABLE OF AUTHORITIES**

**CASES**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).............. 16

*Baker,* 74 F.3d 906, 910 (9th Cir.1996)................................................................. 15

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)......................................... 1

*Briggs v Blomkamp*..............................................................................2, 3, 5, 18

*Briggs v Universal Pictures*............................................................ 2, 4, 13

*Cedars-Sinai Med. Ctr. v Superior Court* (1988) 18 C4th 1, 17, 74 CR2d 248................ii, 18

*Celotex Corp. v. Edwards*, 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).... 13

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................. 1

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)......... 1

*Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005)......................................... 1

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).............. 1

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001)..................... 15

*Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001)................................... 13, 15

*Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 528-29 (9th Cir.1998)......... 15

**RULES**

FRCP Rule 8...................................................................................................... 20

FRCP 8(a)(2) ................................................................................................... 1

FRCP 12(b)(6)................................................................................................. 1

FRCP Rule 37.................................................................................................. 3

**CODES**

California Labor Code § 1700.39 ..................................................................... 20

California's Unfair Business Practices Act..............................................................7, 12

**CALIFORNIA JURY INSTRUCTIONS**

CA **Civ** Jury Instructions (CACI) 3600.........................................................ii, 16

CA Civ Jury Instruction 204 ............................................................... 18, 19

**OTHER AUTHORITIES**

Cornell Law School's Wex Legal Dictionary....................................................13, 14

| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### LEGAL STANDARD

DISMISSAL

- The FRCP 12(b)(6) instructs the court must "accept factual allegations in the complaint as true and construe the pleadings **in the light most favorable to the nonmoving party**." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

- The court must: "read the complaint generously and draw all reasonable inferences in favor of the plaintiff." Knievel v. ESPN, 393 F.3d 1068, 1080 (9th Cir. 2005).

- If motion to dismiss is granted, a court should grant leave to amend unless it determines the pleading could not possibly be cured by allegations of other facts. Cook, Perkiss & Liehe v. N. Cal. Collection Serv., 911 F.2d 242, 247 (9th Cir. 1990).

STATING THE CLAIMS

- *Ashcroft v. Iqbal*, <u>556</u> <u>U.S.</u> 662 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) stated: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

- Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), made a nuanced change to Conley v. Gibson, as Twombly specified that a complaint need not contain detailed factual allegations, but only allege **"enough facts to state a claim to relief that is plausible on its face."**

- In 1957, *Conley v. Gibson***, 355 U.S. 41 (1957)** established the current standard stating: **"a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"**

| | |
|---|---|
| 1 | **STATEMENT OF FACTS** |
| 2 | This matter has some unquantified relationship to the Prior Action Briggs v |
| 3 | Blomkamp, et al, CV134679-PJH. |
| 4 | **In Prior Action Briggs v Blomkamp**: The Complaint explained that in May of 2013, |
| 5 | the Plaintiff walked into a movie theater and saw a trailer of a soon-to-be-released film that |
| 6 | looked almost identical to the Plaintiff's screenplay. The Plaintiff then sued for one (1) |
| 7 | Cause of Action: Copyright Infringement. The Plaintiff lost on summary judgment. The |
| 8 | matter is now in the Ninth Circuit Court of Appeals. |
| 9 | **In this matter, Briggs v Universal Pictures, et al:** In 2016, 15 months **after** the Prior |
| 10 | Action went to appeals, the Plaintiff learned that Defs Spacey and Brunetti went to Spain |
| 11 | and London to promote the content of their **social network** TriggerStreet.com (**TS**), which |
| 12 | was in violation of TS contract Terms of Use, which stated TS was intended solely for use |
| 13 | in the USA. (This was a clear Breach of Contract and it was Fraud and Copyright |
| 14 | Infringement; thus it forms the basis for this suit's Breach, Fraud and Infringement causes.) |
| 15 | As the Plaintiff continued to review the various contract pages he found other instances |
| 16 | of fraud and deceit; thus, the Deceit claim. |
| 17 | Approximately simultaneous to these discoveries, the Plaintiff learned that the Defs |
| 18 | closed the TS website 6 days after the Prior Action went to appeals. This was a clear effort |
| 19 | to destroy evidence. This informs both the *spoliation* and *conspiracy* claims. |
| 20 | Eventually the Plaintiff learned that the man the Defendants hired as their "expert" |
| 21 | witness in Brigg v Blomkamp, Jeff Rovin, went on national TV (FOX News' Sean Hannity |
| 21 | Show) to tell the world that he (Rovin) worked for years for President Bill Clinton's |
| 22 | administration as a "fixer" (someone paid to write false "smear" stories for tabloid news |
| 23 | outlets about Clinton critics, and thereby make problems go away). Incidentally, Def |
| 24 | Emanuel's brother, Rahm Emanuel, was Senior Advisor to President Bill Clinton. |
| 25 | The Plaintiff then realized that the Defendants hired Rovin to "fix" his expert report, |
| 26 | to sabotage the Plaintiff's lawsuit. |
| 27 | With all of these facts (and many more), the Plaintiff took action, and sued the |
| 28 | Defendants on November 13, 2017. |

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

| | |
|---|---|
| 1 | **Briggs v Blomkamp (Prior Action) Facts** |
| 2 | |
| 3 | ● In 2006 the Plaintiff joined Kevin Spacey's online screenwriter and filmmaker social |
| 4 | network *"Trigger Street"* (**TS**), located at TriggerStreet.com. |
| 5 | ● The Plaintiff posted his screenplay (*Butterfly Driver*) on TS for most of 2007. |
| 6 | ● The plaintiff remained a member of TS until it closed, October 2014. |
| 7 | ● The Plaintiff believes that his work was accessed on TS, misappropriated and |
| 8 | produced into the film Elysium, which was released in 2013. |
| 9 | ● The Plaintiff discovered the infringement and in 2013. Three (3) of those |
| 10 | Defendants are named in THIS suit; ten (10) defendants are new to this matter. |
| 11 | ● In 2013, in news reports, Def Blomkamp stated that editing for the film Elysium |
| 12 | ended in Feb or March of 2013. But based on information and circumstances, the |
| 13 | Plaintiff predicted in his Complaint that after learning of the Plaintiff's forthcoming |
| 14 | lawsuit, Blomkamp and his editors went back in and re-edited the film to try to |
| 15 | remove evidence of infringement (the headaches). Through Interrogatories, Def |
| 16 | Blomkamp confirmed this prediction, and admit that editing ended in May or June, |
| 17 | 2013. However, in response to the Plaintiff's discovery requests, the Defs only |
| 18 | provided a statement from editor Julian Clarke, and refused to provide a statement |
| 19 | from the final editor Lee Smith, who would have confirmed that he was asked to |
| 20 | remove the central headache scenes. This amounted to a Rule 37 violation. |
| 21 | ● During the Prior Action, the Plaintiff discovered that the Defendant's expert witness, |
| 21 | Jeff Rovin, submitted falsified witness report which included a staggering number |
| 22 | of false claims and fraud, and in which he substantially altered evidence to support |
| 23 | his own false claims, which amounted to Commiting Fraud Upon the Court. |
| 24 | ● The Plaintiff reported Mr. Rovin's fraud and falsification to the Court in a Motion to |
| 25 | Disqualify/Exclude Rovin's report. This motion, surprising the Plaintiff, was denied. |
| 26 | ● The Plaintiff lost on summary judgement and the matter is currently in the appellate |
| 27 | court, where it has been for almost 3 years. |
| 28 | |

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

| | |
|---|---|
| 1 | **Briggs v Universal Pictures, et al, (Current Action) Facts** |
| 2 | |
| 3 | • While the Prior Action was in appeals, in February 2016, the Plaintiff learned that |
| 4 | between 2002 and 2009 Defendant Spacey and Brunetti went to London and to |
| 5 | Spain to recruit new TS members. AND while in Barcelona, Spain Spacey boasted |
| 6 | that TS had 400,000 member **around the world**, which was many more members |
| 7 | than they plaintiff realized or had reported to the Court. |
| 8 | • Immediately, in February of 2016, the Plaintiff contacted the 9th Circuit Court of |
| 9 | Appeal to inform them of the 400,000 member around the world (the Plaintiff did so |
| 10 | to attend a question about **"widespread dissemination"** |
| 11 | • Shortly after that, the Plaintiff realized that Spacey's and Brunetti's travels to Spain |
| 12 | and London to promote and recruit members for TSwere a **Breach of Contract** of |
| 13 | TS's Terms Of Use, which stated that TS was solely for use in the USA. And |
| 14 | Spacey's statement that TS had "400,000 members around the world," was an |
| 15 | admission that he knew TS was operating in violation of TS's terms of use. This was |
| 16 | (and is) **Fraud**. |
| 17 | • The Plaintiff then went online to go to the TS website to read the Terms Of Use |
| 18 | page. (This was February or March of 2016.) |
| 19 | • The Plaintiff discovered that the TS website was inexplicably closed. |
| 20 | • The Plaintiff went to "The Internet Archives" and a few other websites and |
| 21 | discovered that 6 days after the Plaintiff filed his Notice Of Appeal to the 9th Circuit |
| 21 | Court of Appeals. |
| 22 | • The Plaintiff then considered the facts and decided that the Defendants closed the TS |
| 23 | social network website, immediately after they learned of the Plaintiff's appeal, |
| 24 | because they feared the Plaintiff would prevail (for numerous reasons—but |
| 25 | primarily because the Plaintiff cited prevailing law, while the Defendants cited |
| 26 | vacated law; thus, the matter would likely be returned to the lower court for trial, |
| 27 | where the Plaintiff would subpoena all records from TS). This would present many |
| 28 | impossible problems for the Defendants. |

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

1     ●  One of the many reasons that the Plaintiff felt he would prevail on appeal was that
2         the district court based its ruling on the Defendants' expert witness report of a man
3         named Jeff Rovin. The witness report contained massive incidents of fraud and
4         falsification, which the Plaintiff reported to the district court. Although the district
5         court failed to take action on Rovin's fraudulent report, the Plaintiff felt that he had
6         done an excellent job of documenting the fraud for the Appellate Court, and this
7         would be another basis to return the case to the lower court.

8     ●  As the Plaintiff reviewed the Terms Of Use and other contract pages from TS, he
9         learned of numerous violations and fraudulent statement contained therein. These
10       false statement fortify the Causes of Action: Fraud /Intentional Misrepresentations,
11       Deceit, and Concealment.

12     ●  As the Plaintiff researched the Defendants he discovered many published actions
13       that they had taken that were in violation of the TS *Terms of Use*, or in violation of
14       other state or federal law (or violations of basic ethics).

15     ●  The Plaintiff found evidence of a total disregard for most business ethics, uncovering
16       NY Times and Los Angeles Times stories in which the Defendants' film industry
17       peers anonymously sound the alarm about the Defendants shady relationships and
18       disregard for business and labor codes.

19     ●  As the Plaintiff investigated Def Ari Emanuel's many unethical relationships with
20       other Defendants, the Plaintiff learned that Def Emanuel and Def Spacey both
21       worked for CAA talent agency back in the mid-late 1980s.

21     ●  The Plaintiff remembered that, like Def Spacey, Defs Damon and Affleck also had a
22       filmmaker/screenwriter social network website (ProjectGreenlight.com), and Damon
23       and Affleck were both represented by Def Emanuel or his talent agency WME.

24     ●  Defendant Emanuel was/is also the talent agent of Def Neill Blomkamp—the man
25       the Plaintiff accused of misappropriating his screenplay in Briggs v Blomkamp.

26     ●  During this research the Plaintiff learned that Sony had purchased the rights to make
27       Elysium from Blomkamp ($100,000,000 budget) without ever reading a  screenplay.
28       This was reckless and negligent, and against all reasonable business practices.

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

1  ● As the Plaintiff did more research on the Defendants' reckless and negligent conduct
2  and business practices and  relationships, he learned that in addition to Emanuel's
3  questionable business relationships with Media Rights Capital, Def Emanuel was
4  also secretly involved in owning a business with Def Bill Block and Sony Pictures'
5  (then) CEO, in violation of California business codes.

6  ● The Plaintiff then discovered the Defendants' expert witness had gone on Fox News'
7  Sean Hannity Show (a major national TV show) to tell the world that he (Rovin)
8  worked for years for President Bill Clinton's administration as a "fixer" (someone
9  paid to write false "smear" stories for tabloid news outlets about Clinton critics, and
10  thereby make problems go away). The Plaintiff then realized that the Defendants
11  hired Rovin to "fix" his expert report to sabotage the Plaintiff's lawsuit.

12  ● Def Emanuel's brother, Rahm Emanuel, worked for President Bill Clinton

13  ● The Plaintiff determined that Def Emanuel was likely behind the entire conspiracy.

14  ● The Plaintiff then sued the Defendants, November 13, 2017.

15  ● The Defs responded with a tenuous and inaccurate Motion to Dismiss.

16  ● The Defs' Motion was riddled with obvious falsehoods, errors, and oversights;
17  therefore, the Plaintiff filed a Motion for Sanctions against the Defense Counsel.

18  ● Shortly after suing the Plaintiff realized that Spacey and Brunetti's efforts to make
19  TS available in foreign markets, and to recruit new members around the world, made
20  the Plaintiff's work available all around the world—without the Plaintiff's consent.
21  This was a new violation of the Plaintiff's exclusive copyright to distribute his work.

21  ● Under copyright law the 3 year time limit to take action begins to count from the
22  time the copyright owner learns of the infringement. The Plaintiff learned of the
23  infringement on or around February, 2016. Thus, the Plaintiff's time limit to take
24  action expires around February 2019.

25  ● In light of these new facts, the Plaintiff filed his FAC, citing Infringing Exportation
26  and Copyright Infringement among its 13 Causes of Action against the Defendants.

27  ● In response, the Defs filed **2** separate, coordinated and deficient Motions to Dismiss.

28

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

| | |
|---|---|
| 1 | <div align="center">**<u>ARGUMENT</u>**:</div> |
| 2 | **1.  THE DEF'S MOTION FALSELY ASSERTS THAT THE  FAC FAILS TO** |
| 3 | **PROVIDE NOTICE OF THE BASIS FOR PLAINTIFF'S CLAIMS AGAINST NBCU** |
| 4 | The Defendant's claim that "the Plaintiff's FAC fails to provide notice of the basis of |
| 5 | Plaintiff's claims against NBCU" (Universal Pictures) is deliberately and patently false. |
| 6 | The FAC shows Defs **Universal Pictures** and NBCU's motivation, their actions, and |
| 7 | their financial reward for their engagement in the various infractions. |
| 8 | To reduce length, there is one detail about Def NBCU Plaintiff omitted from his FAC: |
| 9 | **1.  Universal Pictures (NBCU) originally agreed to co-finance Elysium** (which may |
| 10 | be an infringement of the Plaintiff's work). |
| 11 | The FAC shows Def **Universal Pictures** participated in a conspiracy among the Defs |
| 12 | to enrich themselves by engaging in corrupt business practices; hence the Causes of Action: |
| 13 | Negligence, Gross Negligence, Conspiracy and Violations Of Unfair Business Practices |
| 14 | Act.  **The FAC reveals the following facts** (<u>and **realleges**</u> them in every Cause of Action)**:** |
| 15 | A.  The FAC Explains That Property Stolen (Perhaps By Other Defs) Repeatedly Came |
| 16 | Into The Possession Of Def **Universal Pictures** (NBCU); |
| 17 | B.  The FAC Shows Def **Universal** (NBCU) Participated In Unscrupulous Engagements |
| 18 | With The Other Defs, And Explains Why They Did So —In The Defs' Own Words! |
| 19 | C.  The FAC Reveals Why Def **Universal Pictures** Engaged In These Activities And |
| 20 | Relationships —in Def Wiczyk's Own Words! |
| 21 | D.  The FAC Shows That Immediately After Spacey Formed Triggerstreet, Def **NBCU** |
| 21 | Gave Spacey Unusually Generous Gifts That No Other Studio Would Offer; |
| 22 | E.  The FAC Shows That After Def Spacey Formed TS, **Universal Pics** Gave Def MRC |
| 23 | A Huge Contract (When Other FIlm Companies Would Not Work With MRC); |
| 24 | F.  The FAC Shows **Universal Pictures** (NBCU) Gave Def Brunetti A <u>Very</u> Generous |
| 25 | Opportunity That No One Else In Hollywood Has Given Brunetti (Before Or Since); |
| 26 | G.  Using The Defs Own Text Messages, The FAC Shows **Universal Pics** Was Used To |
| 27 | Drive Up Bidding On Films Like "Steve Jobs"; Thus, **NBCU** Profited From, And |
| 28 | Helped Other Defs Profit From Unethical (Likely Illegal) Actions. |

<div align="center">OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS</div>

1     (A) FAC EXPLAINS THAT PROPERTY STOLEN (PERHAPS BY OTHER DEFS)

2     REPEATEDLY CAME INTO THE POSSESSION OF DEF UNIVERSAL PICTURES

3     **Paragraph 26 of his FAC** the Plaintiff makes it clear that stolen property, acquired by

4   Def Ari Emanuel, and being sold or coming into the possession of **Universal Pictures** was

5   a recurring pattern in this Complaint:

> 26.   This Complaint reveals Def Ari Emanuel lead a conspiracy to
> misappropriate ideas using TS and ProjectGreenlight.com (**Project
> Greenlight)**, to market these ideas to his business partners at Sony Pictures,
> MRC, Universal Pictures, NBCUniversal, etc.   Relevant to this, Def
> Emanuel or WME has represented Defs Ben Affleck and Matt Damon for
> most of their careers. Curiously, like Spacey, Affleck and Damon ran a
> screenwriter/filmmaker website, *Project Greenlight,* from 2000-05 and
> 2015-16**.** Curiously, both sites used peculiar language like *peer-to-peer,* and
> used *peer reviews* to weed out bad scripts. And curiously, Spacey, Damon
> and Affleck were the only celebrities with screenwriter websites from
> 2000-2014. In 2005, writer Joel Lamontagne sued Project Greenlight and
> **Harvey Weinstein's *Miramax*,** alleging the TV series *Project Runway*
> (2005-present) was stolen from a treatment he submitted to Project
> Greenlight. <u>The allegedly stolen work became the property of Universal
> Pictures' parent, **NBCUniversal**. Def Emanuel's shadowy projects
> eventually becoming the property of **Universal** is a recurring pattern in this
> Complaint.</u>

18     (B) THE FAC ILLUSTRATES HOW DEF  UNIVERSAL (NBCU) PARTICIPATED IN

19     UNSCRUPULOUS ENGAGEMENTS WITH THE OTHER DEFS,

20     AND EXPLAINS WHY THEY DID SO —IN THE DEFS' OWN WORDS!

21     The FAC shows how Def **Universal Pictures** engaged in unscrupulous relationships

and actions with the other Defs. Paragraph 47 and 48 of the FAC explain that Def Modi

Wiczyk wrote a very controversial and unethical—but film-industry changing—"memo" in

1999. This memo, in which Wiczyk openly discussed violating state and federal business

laws, would make Defs Wiczyk, Satchu, Emanuel and MRC considered pariahs by many

ethical film producers in Hollywood. However, without regard for consequences, Def

**Universal Pictures** would "headhunt" Wiczyk, and hire him away from Summit

Entertainment, and promote him to Vice-President of Productions at **Universal Pictures**

—because **Universal Picture**s wanted Wiczyk to reveal how the plan he hinted at in his

memo could be executed. Paragraph 47 and 48 of the FAC read:

> **47.**   In 1999, only 27 years old, Def Mordecai (Modi) Wiczyk, the new Senior Vice President of Production and Acquisitions at Summit Entertainment, LLC, sent out a **memo** titled "Another New Ball Game". That memo sent Hollywood's unethical establishment scrambling after massive new profits. Wiczyk's memo would be discussed in magazines and lounges for years. Within a year, in 2000 (likely at Def Ari Emanuel's bidding) **Universal Pictures** would steal Wiczyk away from Summit, making him VP of Productions. Two years later, Def Ari Emanuel made Wiczyk his **partner** at Endeavor Talent Agency.
>
> **48.**   In 2007, *Slate* remembered "the memo" in an article called "How An Agent Turned His Pie-In-The-Sky Memo into A Reality". (Said "Slate" article is attached as "**Exhibit I**" and is incorporated by reference as if fully set out herein.). Writer Kim Masters wrote:
>
> > ...The memo predicted the decline of the studios, with filmmaking talent as the beneficiary. He also predicted that a management company with a lot of big stars would start to produce and own films. "The most immediate and pressing challenge would be to get the studios to carry the product," he said. The likelihood of a studio boycott was remote, he said, because "whichever studio was suffering at the time would probably break ranks in the name of short-term self-preservation." Hmm.
> >
> > Michael Ovitz eventually tried to launch such a management company and failed. But Wiczyk's memo said the agencies could also carry out the change. **"A similar structure could be created which complies with the conflict-of-interest laws,"** Wiczyk wrote. "If [a] fund was created as a stand-alone entity and the agency had an arms-length service contract, they could avoid conflict-of-interest violations… Admittedly this is a delicate issue and a tough deal to pull off, but it's certain someone would **try it**." Why? The potential for enhancing agency commission was "too rich to ignore." **In fact, he said, an agency could double its annual revenues.**

These two paragraphs show Def Universal Pictures (NBCU) involvement in the unethical business arrangements and practices that would lead to, as the FAC explains, their relationship with Ari Emanuel, then to the creation of MRC, and soon after, to their relationship with Def Spacey and Brunetti (who would subsequently commit numerous infraction against the Plaintiff). These two paragraphs also explain why Def **Universal Pictures** pursued Wiczyk: to engage in the scheme he outlined in the "memo."

1   (C) THE FAC REVEALS WHY DEF UNIVERSAL PICTURE ENGAGED IN THESE

2   ACTIVITIES AND RELATIONSHIPS —IN DEF WICZYK'S OWN WORDS

3   Wiczyk's "memo" was effectively a resumé or a job application. For an agency to

4   implement his plan, they would need to hire him, as the plan was more intricate than the

5   short *memo* revealed. But Wiczyk's *memo* explains why a studio would risk forming the

6   potentially illegal "hybrid" studio/talent agency described in his memo, stating:

7   "whichever studio was suffering at the time would probably
    break ranks in the name of short-term self-preservation."
8

9   With those words, Wiczyk predicted that whichever studio was least profitable would

10  break ranks and try his new scheme. The FAC explains in paragraph 55 that the year before

11  Def Wiczyk published his "memo" **Universal Pictures** had been in last place among the big

12  Studios for three (**3**) consecutive years:

13  55.   Bronfman Jr. was in trouble in 1998, and most of Hollywood knew it.
       Bronfman Jr. came to power in 1995 with Universal in 4th place among the
14     big six studios (20 Century Fox, Disney, Paramount, Warner Bros., Sony
       Pictures, Universal Pictures). But only one year later, in 1996, Universal
15     was in last place. And last again in 1997. And in 1998, even worse: last
       place, and Universal had one of its worst years ever, with only a 5.9%
16     market share. Stockholders were restless. (See **Exhibit J**.)
17

18  This situation—being in last place 3-years running—is why **Universal Pictures**, paid

19  close attention when Wiczyk published his memo in 1999. And it is why **Universal** broke

20  ranks and hired Wiczyk in 2000, just as Def Wiczyk's memo predicted.

21

21  (D) THE FAC SHOWS THAT IMMEDIATELY AFTER SPACEY FORMED

22  TRIGGERSTREET, UNIVERSAL PICS GAVE SPACEY UNUSUALLY GENEROUS

23  ROLES THAT NO OTHER STUDIO WOULD OFFER —NOT EVEN SPACEY'S

24  HOME STUDIO, WARNER BROS

25  On paragraphs 91, 92 and 101, the FAC shows how Def Spacey received over-generous

26  rewards from Def **Universal Pictures,** after Spacey formed the TriggerStreet (TS) network.

27  •   91.   KPAX was released Oct 2001. It would be the first time
    **Universal Pictures EVER** cast Kevin Spacey in a leading role (in fact,
28

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

**10**

Universal had only ever cast Spacey in **one [1]** film, a **supporting** role, ten years prior, in 1990, in "Henry & June"). (*Spacey was most commonly cast in **Warner Bros** films and independent films.)  Casting Spacey to star in K-PAX, a $68 million film, at such a low point in Spacey's career, was almost inconceivable. **Def Spacey wouldn't star in a film with a budget over $40 million for 5 more years** (Superman Returns). Spacey would only appear in one other Universal Pictures film, 2 years later, *The Life of David Gale*—originally a Warner Bros (Spacey's stable) property that Universal Pictures optioned. Spacey just came with the deal.

● 92. A month after K-PAX was released, in November 2001, director/writer **Eliseo Subiela (via Jason Laskay) sued Universal Pictures**, Gene Brewer, et al, for plagiarizing his film *Man Facing Southeast*. The suit was eventually withdrawn when Subiela and Laskay could no longer afford to litigate against a giant corporation like Universal Pictures.

● 101. In **February 2003**, 3 months after TS launched, **Universal Pictures** distributed Spacey's film "**The Life of David Gale**" (again, originally a property of Spacey's home studio, Warner Bros). This would be the last time Universal Pictures would be involved in a Spacey film (to the date of the filing of this Complaint). Thus, the only two Universal Pictures films featuring Spacey as a lead are *K-PAX*, and *The Life of David Gale*.

(E) THE FAC SHOWS THAT AFTER DEF SPACEY FORMED TS, UNIVERSAL

PICTURES (NBCU) GAVE DEF MRC A MASSIVE NEW CONTRACT

On paragraph 39 of the FAC the Plaintiff provides a New York Times article from 2007, in which established and ethical Hollywood film producers explain that they are wary of doing business with MRC because of MRC's shadowy business practices. United Talent partner Jeremy Zimmerman explained, "What becomes critical is who is the management?" Then he rightly wondered: "What level of transparency are we going to have?"

Yet, in the face of the ethical doubts about MRC, paragraph 115 of the FAC explains that **Universal Pictures** gave MRC a giant 20 picture film mega-deal.

● 115. May 2010, "Deadline Hollywood" reported Defendant **Universal Pictures** and Defendant Media Rights Capital (MRC) announced a 20 picture, 5-year production and distribution deal. (Said "Deadline Hollywood" article is attached as "**Exhibit W**" and is incorporated by reference as if fully set out herein.)  Thus, MRC's (a company co-owned by Defendant Ari Emanuel) first mega-deal would be with **Universal Pictures**.

1  (F) THE FAC SHOWS THAT UNIVERSAL PICTURES (NBCU) GAVE

2  DEF BRUNETTI A <u>VERY</u> GENEROUS OPPORTUNITY THAT NO ONE ELSE IN

3  HOLLYWOOD HAS GIVEN BRUNETTI

4      The FAC shows that Spacey and Brunetti were credited with creating TriggerStreet,

5  and that the first and only production company to hire Dana Brunetti as a producer, without

6  Kevin Spacey or TS Productions attached, was **Universal Pictures**.

7      ●    122.   In 2015, Def Dana Brunetti produced his **first** solo effort

8  (without Kevin Spacey or their *Trigger Street Production* company), ***50 Shades of Grey***. *50 Shades of Grey* was, of course, <u>distributed</u> by **Universal

9  Pictures,** apparently the only major distributor that will touch a Brunetti film

10  (without Def Spacey or their *Trigger Street Productions* company attached)...

11  (G) USING THE DEFS OWN TEXT MESSAGES, THE FAC SHOWS THAT

12  UNIVERSAL PICS WAS SILENTLY USED TO DRIVE UP BIDDING ON FILMS LIKE

13  "STEVE JOBS"; THUS, THEY PROFITED FROM, AND HELPED OTHER DEFS

14  PROFIT FROM UNETHICAL (AND LIKELY ILLEGAL) ACTIVITIES.

15      Using the Defs' own text message exchanges, paragraphs 126-141 the FAC shows Def

16  Ari Emanuel lied to other Defs (Sony Pictures) or their agents, to drive up the bidding on

17  the "Steve Jobs" Film. When his maneuver failed, Def **Universal Pictures** purchased the

18  film rights —although **Universal** was never in the discussion to purchase the film rights.

19      The FAC concludes this passage of the FAC in paragraphs 140 and 141, explaining

20  how Def Ari Emanuel used Universal Pictures to hedge his bets with the other Defendants:

21      140.   Def Ari Emanuel had just been playing the ace up his sleeve; trying to

21  push the price of the film above market value, to increase his profit margin.

He didn't need Sony Pictures to give him standard market value for "Steve

22  Jobs", he could get standard value from Universal Pictures. When the

maneuver failed, and Sony Pictures backed out, Def Ari Emanuel took the

23  film to the Studio that has distributed all of his films, since around 1999.

24  141.   On September 5th, 2015, 10 months after Sony Pictures declined on

"Steve Jobs", after so much posturing and tumult, "<u>Steve Jobs</u>" <u>was</u>

25  <u>distributed by</u> **Universal Pictures.**

26

27      The FAC shows Def NBCU's continuous engagement in the Causes of Action of

28  Negligence, Gross Negligence, Conspiracy and Violation Of Unfair Business Practices Act.

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

**2A.  THE DEFS FALSELY CLAIM THE FAC IS AN IMPROPER COLLATERAL ATTACK ON THE DISMISSAL OF PLAINTIFF'S PRIOR LAWSUIT**

The Plaintiff's FAC is not a collateral attack. Although collateral attacks are not necessarily prohibited (thus, the Defense Counsel's carefully uses the phrase "**improper** collateral attack"). But, again, the Plaintiff's FAC is not a collateral attack, but an entirely new, and valid, lawsuit.

Cornell Law's Wex Legal Dictionary defines *Collateral Attack* as an "attack on a prior judgment in a new case (i.e., not by direct appeal)."

Such a collateral attack requires:

1. The same parties to be named in the new case.

2. The same causes of action in the new action.

3. **The claims or causes of  action _must have been addressed in the prior order or judgment._**

None of these conditions are met between the Prior action (Briggs v Blomkamp) and the current action (Briggs v Universal Pictures, et al).  Rein v. Providian Fin. Corp., 270 F.3d 895, 902 (9th Cir. 2001), explains:

> "**The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts**.  See Celotex Corp. v. Edwards, 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("We have made clear that [i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected.") (internal quotation marks omitted) (alteration in original).  **Here, the collateral attack doctrine does not apply to Frenette because his claims were never addressed by a prior order or judgment.**"

To support their false claim that the Plaintiff's FAC is an improper collateral attack on the dismissal of the Plaintiff's prior lawsuit, the Defense Counsel made brief and superficial citations of several lower court and outer court decisions. The only citation that the Defense Counsel made that is relevant is the  Rein v. Providian Fin. Corp., 270 F.3d 895, 902 (9th Cir. 2001) (above). However the Defense Counsel truncates their citation, quoting only the first sentence of the paragraph, to mislead the Court.

**2B**. **Redundant to the "Collateral Attack" claim, The Defs Also Falsely Claim**

**The Plaintiff Is "RE-LITIGATING" the Prior Action**

The Defense Counsel has stridently reiterated, ad nauseum, the false claim that the Plaintiff is trying to re-litigate Prior Action Briggs v Blomkamp, et al. This transparently false defense puts the Plaintiff in the unfortunate position of perhaps annoying the Court by over-defending the Defense Counsel's obviously absurd attack. But since the Defense Counsel has repeatedly made that claim, the Plaintiff must take that risk.

In Briggs v Blomkamp, Plaintiff walked into a movie theater and saw a trailer that was identical to his screenplay, then sued for one (1) Cause of Action: Copyright Infringement.

In this matter, the Plaintiff learned (15 months after the Prior Action went to appeals) that Defs Spacey and Brunetti had gone to Spain and London to promote the content of their social network TriggerStreet.com (TS). This was in violation of TS contract Terms of Use, which stated TS was intended solely for use in the USA. This was a clear breach of contract and it was fraud, thus it formed the basis for this suit's *Breach of Contract* and *Fraud* Causes of Action. (These facts also support the infringement Cause of Action.) As the Plaintiff reviewed the various TS contract pages he found other instances of fraud and deceit; furthering the Fraud Cause, and establishing other Causes, such a Deceit, etc. Virtually simultaneous to these discoveries the Plaintiff learned that the Defs closed the TS website 6 days after the Prior Action went to appeals. This was a clear attempt to destroy evidence; thus the *spoliation* claim. All of this also fortifies the *conspiracy* claims.

**2C.** **Redundant to both the "*Collateral Attack*", and "*Relitigating*" Defenses, The Defs**

**Falsely And Senselessly Assert A RES JUDICATA Defense Against The FAC**

The Defense Counsel suggest the Plaintiff's FAC violates the principle of Res Judicata (see Motion to Dismiss, page 6). The conditions for raising a Res Judicata defense are clear and DO NOT apply in this case. To assist the Court the Plaintiff provides the following definition **and examples** of Res Judicata from Cornell Law School's Wex Legal Dictionary:

> Generally, *res judicata* is the principle that a <u>cause</u> <u>of</u> <u>action</u> may not be relitigated once it has been judged on the merits. "Finality" is the term which

| | |
|---|---|
| 1 | refers to when a court renders a final judgment on the merits. |
| 2 | *Res judicata* is also frequently referred to as "claim preclusion," and the two are used interchangeably throughout this article. |
| 3 | Breaking Down the Concept |
| 4 | Claim preclusion can be best understood by breaking it down into two sub-categories: |
| 5 | 1.  **Bar** - a losing plaintiff cannot re-sue a winning defendant on the same cause of action |
| 6 | 1. example: Plaintiff P sues Defendant D on Cause of Action C, but loses. P may not try for better luck by initiating a new lawsuit |
| 7 | against D on C. |
| 8 | 2.  Merger - a winning plaintiff cannot re-sue a losing defendant on the same cause of action |
| 9 | |
| 10 | 1. example: Plaintiff P successfully sues Defendant D on Cause of Action C. P may not again sue D on C to try to recover more Damages. |
| 11 | |

12  The conditions for a Res Judicata defense are not present or satisfied in this matter, as

13  the facts of this matter are entirely new, unique and separate, and derive from entirely new,

14  unique and separate events, and involve 10 new Defendants.

15  <u>Rein v. Providian Fin. Corp., 270 F.3d 895, 902 (9th Cir. 2001)</u>, clarified:

> 16  Res judicata, or claim preclusion, provides that a final judgment on the merits
> 17  of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised in that action.   See In re Baker,
> 18  74 F.3d 906, 910 (9th Cir.1996).   Claim preclusion is appropriate where: (1)
> 19  **the parties are identical or in privity**; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final
> 20  judgment on the merits;  and (4) **the same claim or cause of action was involved in both suits.**  Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d
> 21  708, 713 (9th Cir.2001);  Siegel v. Federal Home Loan Mortgage Corp., 143
> 21  F.3d 525, 528-29 (9th Cir.1998).

22  Once again, the conditions necessary to make a Res Judicata claim or defense are not

23  satisfied here, as:

24  1. the parties are not identical (there are 10 parties not named in Prior Action);

25  2. the claims are not the same (there are 12 new claims in this matter, and the copyright

26  infringement claim is unrelated and made against different Defendants).

27  The facts and causes of actions of the two matters are not related. In Prior Action

28  (Briggs v Blomkamp, et al), the Plaintiff walked into a movie theater and saw a trailer of a

1  movie that looked identical to his screenplay, then sued for one (1) Cause of Action:
2  Copyright Infringement.

3     In this matter, the Plaintiff learned (15 months after the Prior Action went to appeals)
4  that Defendants Spacey and Brunetti went to Spain and London to promote the content of
5  TriggerStreet.com (TS), in violation of TS contract Terms of Use, which stated TS was
6  intended solely for use in the USA. This was breach of contract and fraud. Thus, these
7  events are the basis for this suit's Cause of Action *Breach of Contract* and *Fraud*. As the
8  Plaintiff reviewed the various contract pages he found other instances of fraud and deceit;
9  furthering the *Fraud* Cause, and initiating other Causes, such a Deceit.  Around this same
10 time, the Plaintiff learned that the Defendants had closed the TriggerStreet social network
11 only six (6) days after the Prior Action went to appeals. This informs the spoliation claim.
12 Shortly thereafter, the Plaintiff learned that the Defs' expert witness in Briggs v Blomkamp
13 admitted on national TV (in 2016) that he was a "fixer"—a person hired to produce false
14 stories and smear people. All of this informs the conspiracy claim.

15

16     **3A.  DEFENDANT FALSELY CLAIM CALIFORNIA DOES NOT**
17            **RECOGNIZE CIVIL *CONSPIRACY***

18     Contrary to what the Defendants have falsely proffered, for decades, perhaps from its
19 inception, California has recognized actions for civil *conspiracy*. In fact, in the case *Applied*
20 *Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) the Court explained
21 that civil conspiracy is: **"not a cause of action, but...a legal doctrine that <u>imposes</u>**
21 **<u>liability</u> <u>on</u> <u>persons</u> who, although not actually committing a tort themselves, share**
22 **with the immediate tortfeasors a common plan or design in its perpetration."**

23     Civil Conspiracy is commonly litigated in California courts. To support claims of civil
24 conspiracy CA Civil Jury Instructions (CACI) 3600 provides juries the factual elements of
25 conspiracy. These elements are:

26     [Name of plaintiff] claims that [he/she] was harmed by [name of
27     coconspirator]'s [insert tort theory] and that [name of defendant] is
       responsible for the harm because [he/she] was part of a conspiracy to commit
28

[insert tort theory]. A conspiracy is an agreement by two or more persons to commit a wrongful act. Such an agreement may be made orally or in writing or may be implied by the conduct of the parties. If you find that [name of coconspirator] committed [a/an] [insert tort theory] that harmed [name of plaintiff], then you must determine whether [name of defendant] is also responsible for the harm. [Name of defendant] is responsible if [name of plaintiff] proves both of the following:

1. That [name of defendant] was aware that [name of coconspirator] [and others] planned to [insert wrongful act]; and

2. That [name of defendant] agreed with [name of coconspirator] [and others] and intended that the [insert wrongful act] be committed. Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make [name of defendant] responsible for the harm.

**A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators. [Name of plaintiff] is not required to prove that [name of defendant] personally committed a wrongful act or that [he/she] knew all the details of the agreement or the identities of all the other participants.**

Both the recognition of conspiracy as a legal doctrine with imposition of liability on defendants found guilty of this infraction, AND the provision for California juries of the factual elements of conspiracy, in CACI 3600, makes conspiracy virtually a Cause of Action in California, in force and effect.

More importantly, the final passage from the CACI 3600 jury instructions (above in bold), confirms that not only are the necessary elements of civil conspiracy present in this matter, but **the Plaintiff does NOT need to prove any Defendant committed any wrongful act**, AND it makes it clear that **a jury may INFER a conspiracy from factors such as circumstances, the nature of the acts done, the relationships between the parties, and the interests of the alleged co-conspirators.**

The Plaintiff's FAC carefully includes the details of the conspiracy necessary to establish these circumstances, Defendant relationships, nature of the acts, and the shared interests of the Defendants, to help the Court and the jurors comfortably decide in the Plaintiff's favor.

**3B.  DEFENDANTS' FALSELY CLAIM THAT THERE IS NO UNDERLYING TORT TO SUPPORT A CIVIL CONSPIRACY CLAIM**

Although the Defense Counsel claims either there was no underlying tort in the conspiracy, or there was no *stated* or *claimed* tort (as if hopeful to cheat justice by virtue of some insignificant technicality), their clients understand there was the very real underlying tort of Copyright Infringement still unresolved in the Prior Action, AND the very real possibility that at any minute the Plaintiff might discovery the Breach of Contract and Fraud hidden in the TriggerStreet contracts (and in Def Spacey's travels to Spain and London to recruit new international members) which would trigger a Breach and Fraud Cause of Action. These facts, and the almost inevitable discovery that the TS had been secretly promoting their social network overseas, and unlawfully distributing the Plaintiff's work in foreign markets, could trigger a Copyright Infringement action at any moment. Thus, depending on the application of law, there was at least one (**1**) active underlying tort, and potentially 12 new underlying torts—validating an action for conspiracy in California.

**4.  DEFS FALSE CLAIM CALIFORNIA DOES NOT RECOGNIZE SPOLIATION**

The Defendants falsely claim that California does not recognize spoliation actions..But, in fact, California allows spoliation claims (per *Cedars-Sinai Med. Ctr. v Superior Court* (1988) 18 C4th 1, 17, 74 CR2d 248), **in cases such as this**, when:

a.  the spoliator is not a party to the lawsuit, but a third party with a duty to preserve the evidence (**Spacey and Brunetti were not parties of Briggs v Blomkamp**); or

b.  when the spoliation victim does not learn of the spoliation until after trial or a decision on the merits.

Again, consistent with these requirements **(a)** the Defendants accused of Spoliation (Spacey and Brunetti) were not parties of Briggs v Blomkamp; and **(b)** the Plaintiff learned 15 months **after** the Briggs v Blomkamp decision.

Therefore, the action for *spoliation* can proceed in California.

Additionally, California Civil Jury Instruction 204 instructs juries on the elements of spoliation:

**204. Willful Suppression of Evidence**:

You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.

—CA Civ Jury Instructions, 204

Therefore, again, the action for spoliation can proceed in California.

## 5.  DEFENDANTS ASSERT THAT THE FAC FAILS TO ALLEGE ANY CONDUCT BY NBCU THAT SUPPORTS A NEGLIGENCE CLAIM

The FAC, and pages 7-12 of this Memorandum, show that Def Universal Pictures and/or NBCU  engaged in the following activities:

1.  Def Universal Pictures (NBCU) hired Def Mordecai Wiczyk the year after Wiczyk published his notoriously unethical "memo," in which he openly discussed how to undermine California labor laws, to "double" profits by acting as both producers and talent agents. This was reckless and negligent.

2.  The FAC shows Def Universal Pictures (NBCU) hired Def Wiczyk because Universal was in last place among the big studios—for 3 consecutive years),. The FAC explains that Wiczyk predicted the studio in last place would "break ranks" to implement his unethical business model. This was recklessly negligent.

3.  Def Universal Pictures helped, and conspired with, other Defendants to distribute, produce and profit from films and television shows that were not their rightful intellectual property. This was reckless and negligent.

4.  Def Universal Pictures (NBCU) originally planned to co-finance (with Def Sony Pictures) and distribute Elysium, a film that may infringe of the Plaintiff's work.

5.  The FAC shows Def Universal Pictures gave Defs MRC, Spacey and Brunetti unusually large contracts and/or opportunities, that no other companies were willing to offer these Defendants.

6.  The FAC shows Def Universal Pictures (NBCU) allowed Def Ari Emanuel to use it (Universal Pictures) as a safety net, to hedge Emanuel's bets and drive up the bidding price of his films. This was reckless, corrupt and negligent.

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS

## 6.  THE FAC DOES NOT ALLEGE ANY CONDUCT BY NBCU
## VIOLATING THE LABOR CODE

The FAC shows that Def Universal Pictures (NBCU) hired Def Mordecai Wiczyk the year after Wiczyk published his notoriously unethical "memo," in which he openly discussed a way to circumvent California labor laws, to "double" profits by acting as both producers and talent agents. The FAC explains that Def Wiczyk predicted that whichever studio was in last place among the big studios would try the plan contemplated in his "memo". Universal was in last place the previous 3 years before hiring Wiczyk.

The Plaintiff believes (as would any reasonable reader of the FAC or these facts) that upon hiring Def Wiczyk, Universal Pictures implemented the unethical business structure contemplated in Wiczyk's "memo," and that business structure endures at Universal Pictures to this day. This is why, as explained in the FAC, Def Universal Pictures made a 20 picture mega-deal with Def MRC.  And just as the FAC explains that Defs Emanuel and Sony Pictures' CEO are secretly business partners in Sceenbid, and just as Defs Emanuel, Satchu and Wiczyk are co-owners of MRC, and just as Def Wiczyk and Satchu own shares of Def Emanuel's WME, Universal Pictures' executives owns a shares of MRC and WME; thus they all profit as agents and employers, in violation of California Labor Code § 1700.39.


## 7.  RULE 8 THE FAC FAILS TO STATE A PLAUSIBLE CLAIM AGAINST NBCU

The Def NBCU's claim that **The Fac Fails To State A Plausible Claim Against NBCU** is a clear, honest, and grandiose statement that Def NBCU believes that: its colossal size makes it somehow above the law, and no reasonable person could ever make a plausible claim against NBCU, because its polished corporate veneer inoculates it from any failings of its fallible executives.  But the Court sees through this hubris.

This defense is  just a slightly altered iteration of the Defendants' Motion to Dismiss' first (I) and fifth (V) defenses, which have been thoroughly addressed herein.

The Plaintiff's FAC stated numerous plausible claims against the Defendant NBCU.

The Plaintiff asks the Court to see pages 8-12 and 19, of this Opposition, to review Plaintiff's clear claims against Defendants Universal Pictures, and NBCUniversal.

| | |
|---|---|
| 1 | **<u>CONCLUSION</u>** |
| 2 | |
| 3 | For the foregoing reasons, the Plaintiff respectfully asks the Court to deny the |
| 4 | Defendants' Motion To Dismiss and Memorandum Of Points And Authorities. |
| 5 | |
| 6 | Dated:  January 30, 2018   |
| 7 | |
| 8 | Respectfully Submitted, |
| 9 | By:  /s/ Steve Wilson Briggs             |
| 10 | Steve Wilson Briggs |
| 11 | Plaintiff, In Propria Persona |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

OPPOSITION TO DEF NBCUNIVERSAL'S MOTION TO DISMISS